Catron, Ch. J.
delivered the opinion of the court.
This hill was filed 20th March 1827, by Bracken against Martin and Jackson. At March term 1828, it was dismissed as to Jackson by complainant.
Complainant alleges that he is the'assignee of Jacob Pyrtle, of a title bond for 160 acres, off the east end of the 1000 acre tract, either the whole length of the line 320 poles south, or' half its length taking the 160 acres in either the north east or south east corner, at his election.
Jackson was the owner of the 1000 acre tract, and on the 25th April 1796, gave Pyrtle said bond for 160 acres, part thereof; and where Pyrtle was authorized to locate, is the principal matter of controversy.
On the 5th October 1796, (the bond outstanding,) Jackson sold and conveyed the 1000 acre tract to Martin, reserving the power to satisfy Pyrtle’s bond, (a copy of which he proves they had before them,) along the whole length of the northern boundary line of 500 poles, *56 or half ⅛6 length of that line, Pyrtle to take it in the north west or north east corner, at the election of Pyr-tle; Jackson warranted the title to the 1000 acre tractto Martin, with this reservation. This deed was duly registered in the county where the land lies, 27th September 1797. So the matter stood until 4th April 1812, when Bracken, the assignee of Pyrtle, applied to Jackson for a deed to the 160 acres; Jackson made the deed for the east end of the tract, 8 poles by 320.
This deed of Jackson for all the land contained in it, south of a point 102 poles from the northern boundary, was void as against Martin’s deed of 1796.
Jackson had reserved the privilege of laying the 160 acre tract in the north east comer, but half the length of the northern boundary of the grant; this would have made the 160 acre tract, 250 poles by 102.
One question is, did Jackson mistake when he made the deed to Martin, where Pyrtle had the power to elect his land? From Jackson’s own proof, this is not to he ascertained. He says he intended to comply with Pyrtle’s bond, and made the reservation as he thought in conformity with it; and second, that when he made the deed in 1812, he first examined on the register’s book, the deed he made to Martin, and executed the deed to Bracken in accordance as he thought with the bond to Pyr-tle, and the reservation made by him in the deed to Martin. At-which time Jackson made the mistake no man can say. In 1812, the original bond was present, and in 1796 a copy.
Martin is clearly innocent of all mistake; he bought from Jackson, with the belief that Pyrtle could not take on the eastern boundary of the tract more than. 102 poles; the balance of land on that line, 218 poles, Jackson conveyed and warranted to Martin; this may have been the main inducement to Martin to buy, or rather exchange for the land, he having let Jackson have another tract for it.
*57 It must be recollected that Bracken prays, as against Martin, a specific decree for land Martin had the legal title to from 1796 to the time of filing this hill in 1827; taking the statement in the bill as true, and the bond had been destroyed fifteen years. Complainant says, when Jackson made him the deed in 1812, he gave up the bond and Jackson burnt it; but when Jackson was examined as a witness, no attempt was made to prove the fact. Complainant attempts to prove a copy of the bond by his father, then 75 years of age, who says he never read the bond, but heard it read, and thinks the paper purporting to be a copy produced by complainant, (then for the first time seen by witness,) a true copy; the witness is almost illiterate, and could not have seen the bond for fifteen years. This proof is most unsatisfactory to ground a specific decree upon, other circumstances aside. Here was the evidence of claim in-Bracken, destroyed by himself, and Martin’s deed, of thirty years standing. From the lapse of time and loss of evidence, it is impossible to come to a satisfactory conclusion how the truth is: Martin has never been in the least default, and is not to suffer by the tardy negligence of Pyrtle or the complainant.
As to the land conveyed by Jackson to Martin, out of which Pyrtle had no right to elect by the face of the deed from Jackson to Martin, Bracken can have no specific performance, for two reasons: 1st, the proof that the bond called for land on the eastern boundary is not satisfactory; and, 2d, the bond was of thirty years’ standing when this bill was filed, a lapse of time rarely to be gotten over when no disabilities interfere.
Of the land reserved in Jackson’s deed to Martin, on the northern boundary, Martin and Pyrtle were tenants in common; Pyrtle having the right to elect the 160 acres the length of the line, or to go half its length, and take his land in the north-east or north-west comer.— This right Martin concedes to the assignee of Pyrtle (the *58 complainant.) To this extent Jackson, in the deed to Martin, reserved the power to convey in discharge of Pyrtle’s bond; and all conveyed beyond it by Jackson to Bracken, is void as against Jackson’s deed to Martin, of 1796.
Geo. S. Yerger, for the complainant.
F. B. Fogg and John Hall, for the defendant.
Bracken may now elect, and should he elect any part of the land sold by Martin to Winchester, the court will then ascertain its value and cause compensation to* be made. It is evident, however, that the land at the eastern side of the tract was the object of Bracken, and that Martin had no right to suppose Bracken would take it at the west end. He had waited long for election, and could not be required to wait the pleasure of Bracken.
Under the circumstances, this is a fair case for compensation. Sugden on Vendors, 209, 222. Newlandon Contracts, 252. The court is obliged to do this, or dismiss the bill, because brought too late. Were this court to entertain bills for specific performance after the lapse of thirty years, it would set a precedent dangerous to the repose of society, and in conflict with its previous course of decision.
Martin rightfully prosecuted the ejectment. The act of limitations would have barred him had he not done so.
The injunction will be dissolved, and the complainant pay the costs of this cause here, and in the court below.
The cause will stand over a reasonable time, in which complainant will make his election; if he fails, the bill will be dismissed.
Decree reversed.